**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW<br>1401 New York Avenue, NW<br>Washington, D.C. 20005,<br><br>        Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530,<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane, SW<br>Washington, D.C. 20528,<br><br>        Defendants. | Docket No. |

# COMPLAINT

## INTRODUCTION

Plaintiff Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") brings this action under the Freedom of Information Act, 5 U.S.C. § 522 ("FOIA"), against Defendants United States Department of Justice ("DOJ") and United States Department of Homeland Security ("DHS") to compel Defendants to disclose records relating to the Presidential Advisory Commission on Election Integrity ("PACEI" or the "Commission") requested by the Lawyers' Committee under FOIA.

This suit concerns the Government's failure to abide by basic requirements of openness and transparency. During its entire existence, PACEI operated under a cloud of pervasive secrecy, in violation of federal law, refusing to make almost all of its records available to the public. Given the Commission's clandestine operations, and the Commission's continued refusal

to disclose information pertaining to it, it is critically important that the activities of DOJ and/or DHS in relation to the Commission be disclosed to the public.

**PARTIES**

1.     Plaintiff the Lawyers' Committee was founded in 1963 and is committed to full and fair enforcement of federal civil rights laws and ensuring equal justice under law for all.  The Lawyers' Committee has been at the forefront of the legal struggle to advance and protect the right to vote, and accordingly has substantial interest in the work and potential consequences of the Commission.  The Lawyers' Committee's rights under FOIA have been violated by Defendants' refusal to disclose records as required by law.  The Lawyers' Committee is located in Washington, D.C.

2.     Defendant DOJ is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and includes the Office of Information Policy and the Office of the Solicitor General.  DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington D.C. 20530, and has possession, custody, and control of documents that the Lawyers' Committee seeks in response to its FOIA request.

3.     Defendant DHS is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1).  DHS is headquartered at 245 Murray Lane, SW, Washington D.C. 20528, and has possession, custody, and control of documents that the Lawyers' Committee seeks in response to its FOIA request.

**JURISDICTION AND VENUE**

4.     The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## STATEMENT OF FACTS

### A.     The Presidential Advisory Commission on Election Integrity

6.     On November 27, 2016, then-President-Elect Donald J. Trump expressed his belief that he would have won the popular vote, in addition to the electoral college, if not for millions of purported illegal votes cast for his opponent.  He tweeted: "In addition to winning the Electoral College in a landslide, I won the popular vote if you deduct the millions of people who voted illegally."  Ex. A.  The President-Elect offered no evidence to support this assertion.

7.     Five days after taking office, on January 25, 2017, the President announced in a series of tweets that he would launch an investigation into voter fraud.  Ex. B.

8.     On May 11, 2017, President Trump established the Commission by Executive Order and appointed Vice President Pence to serve as its Chair.  Exec. Order 13799, 82 FR 22389 (May 11, 2017).  The Executive Order declared that the Commission's stated purpose was to "study the registration and voting processes used in Federal elections," and to produce a report to the President on topics including "those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting."  *Id.* § 3.

9.     The following day, President Trump named Kansas Secretary of State Kris Kobach as Vice Chair of the Commission.  The other members of the Commission were Connie Lawson (Indiana Secretary of State), Bill Gardner (New Hampshire Secretary of State), Matthew Dunlap (Maine Secretary of State), Ken Blackwell (former Ohio Secretary of State), Christy McCormick (Commission, Election Assistance Commission), Mark Rhodes (Clerk of Wood County, West Virginia), Hans von Spakovsky (Senior Legal Fellow, Heritage Foundation), J. Christian Adams (President and General Counsel, Public Interest Legal Foundation), David

Dunn (former Arkansas State Representative), and Alan King (Probate Judge, Jefferson County, Alabama).

10.     Several members of the Commission have a documented history of engaging in efforts designed to suppress voter participation.  For example, as Kansas Secretary of State, Vice Chair Kobach instituted a series of measures ostensibly designed to reduce voter fraud but which in reality targeted and suppressed minority voters.[1]  Kobach has also suggested comparing voter rolls with DHS's "database of all known aliens, green card holders, [and] temporary visa holder[s] in the United States" as a means to prove his allegations of voter fraud.[2]

11.     Von Spakovsky has led efforts urging states to adopt strict photo identification requirements to vote, which disproportionately affects minority voters, and to purge voter registration rolls.[3]  Likewise, Adams has long championed efforts to purge voter registration and has even claimed that an "alien invasion" exists at the voting booth.[4]

12.     On June 29, 2017, Vice Chair Kobach sent a letter to officials of all 50 states requesting that they provide the Commission with personal information of registered voters,

[1] *See* Greg Palast, *The GOP's Stealth War Against Voters*, Aug. 24, 2016, Rolling Stone, http://www.rollingstone.com/politics/features/the-gops-stealth-war-against-voters-w435890.

[2] *Kobach Talks Goals of New Voter Fraud Commission; Commerce Secretary on North Korea Missile Test, China Trade Deal*, Transcript, May 14, 2017, http://www.foxnews.com/transcript/2017/05/14/kobach-talks-goals-new-voter-fraud-commission-commerce-secretary-on-nkorea-missile-test-china-trade-deal.html.

[3] *See* Alex Horton & Gregory S. Schneider, *Trump's Pick to Investigate Voter Fraud is Freaking Out Voting Rights Activists*, Washington Post, June 30, 2017, https://www.washingtonpost.com/news/post-nation/wp/2017/06/30/trumps-pick-to-investigate-voter-fraud-is-freaking-out-voting-rights-activists/?utm_term=.5c57c2cec96b.

[4] Jane C. Timm, *Voter Fraud Crusader J. Christian Adams Sparks Outrage*, NBC News, Aug. 27, 2017, https://www.nbcnews.com/politics/donald-trump/vote-fraud-crusader-j-christian-adams-sparks-outrage-n796026.

including their full names, addresses, dates of birth, voting history, and the last four digits of their Social Security numbers.[5]

13.     Also on June 29, 2017, T. Christian Herren, Jr., Chief of the Voting Section of DOJ's Civil Rights Division, sent a letter to the chief election officials of all 50 states requesting that they provide "information regarding [each] State's procedures for compliance with state voter registration list maintenance provisions of the National Voter Registration Act ('NVRA')."[6]

14.     The timing of these two letters has raised suspicion about undisclosed cooperation between DOJ and the Commission.[7]

15.     On July 10, 2017, the Lawyers' Committee filed a complaint against the Commission and other government entities (who are not defendants in this suit) to enforce the disclosure obligations under the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. II. *See Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity, et al.*, No. 1:17-cv-01354-CKK (D.D.C.) ("PACEI Litigation").  Throughout the PACEI Litigation, the defendants in that case have maintained that they are only required to disclose a minimal number of Commission-related records under FACA.

---

[5] Bryan Lowry, *Kris Kobach wants every U.S. voter's personal information for Trump's commission*, June 29, 2017, Kansas City Star, http://www.kansascity.com/news/politics-government/article158871959.html.

[6] Sam Levine, *This DOJ Letter May Be More Alarming Than Trump Commission's Request For Voter Data*, HuffPost, July 5, 2017, http://www.huffingtonpost.com/entry/department-of-justice-voter-purge_us_595d22b1e4b0da2c7326c38b.

[7] Pam Fessler, *Advocates Worry Trump Administration Wants To Revamp Motor Voter Law*, NPR, July 8, 2017, https://www.npr.org/2017/07/08/536006813/advocates-worry-trump-administration-wants-to-revamp-motor-voter-law.

16.     The Commission held its first official meeting on July 19, 2017.  President Trump attended the meeting and in his opening remarks repeated claims about voter fraud during the 2016 Presidential Election.[8]  He also applauded the states that had agreed to share information with the Commission and suggested that states refusing to do so were hiding something.[9]

17.     At the July 19, 2017 meeting, Vice Chair Kobach directed Commission staff to begin collecting data from other federal agencies relevant to the Commission's work.[10] Commissioner von Spakovsky recommended that the Commission "should have access to . . . DHS data " in particular, in order to study (among other things) whether DHS was sharing information with DOJ.[11]

18.     In response to a motion to compel filed by the Lawyers' Committee in the PACEI Litigation, on August 30, 2017, Judge Kollar-Kotelly ordered the defendants in the PACEI Litigation to produce a *Vaughn*-type index "detailing what specific documents have been collected with respect to the Commission to date, which of those have been disclosed, and if they have not been disclosed, on what basis."  Dkt. 28, No. 1:17-cv-01354-CKK (D.D.C.).

19.     The Commission held a second meeting on September 12, 2017, which focused on the issue of purported voter fraud in the State of New Hampshire.  Although Vice Chair

---

[8] Pam Fessler & Brett Nelly, *Talk of Voter Fraud Dominates First Meeting of Election Integrity Commission*, NPR, July 18, 2017, https://www.npr.org/2017/07/19/538152713/talk-of-voter-fraud-dominates-first-meeting-of-election-integrity-commission.

[9] *Remarks by President Trump and Vice President Pence at the Presidential Advisory Commission on Election Integrity Meeting*, July 19, 2017, https://www.whitehouse.gov/the-press-office/2017/07/19/remarks-president-trump-and-vice-president-pence-presidential-advisory.

[10] Presidential Advisory Commission on Election Integrity, Meeting Minutes at 5, July 19, 2017, https://www.whitehouse.gov/sites/whitehouse.gov/files/documents/Minutes%20for%20July%2019%2C%202017%20Public%20Meeting.pdf

[11] *Id.*

Kobach had claimed that there was proof of widespread voter fraud during the November 2016 election—possibly enough to have influenced the outcome of the election—New Hampshire Secretary of State Bill Gardner, another member of the Commission, denied such claims and stated that the November 2016 election was "real and valid."[12]

20.     Also on September 12, 2017, it was revealed that, prior to the formal establishment of the Commission, von Spakovsky had sent an email about the Commission's membership that was ultimately received by Attorney General Sessions.  Von Spakovsky wrote in that email, dated February 22, 2017, that the Commission should not be "bipartisan" and should not include any "Democrats," "mainstream Republicans," or "academics."[13]

21.     On September 29, 2017, defendants in the PACEI Litigation produced the *Vaughn*-type index ordered by Judge Kollar-Kotelly.  Dkt. 33-3, No. 1:17-cv-01354-CKK (D.D.C.).  The index indicates that members and staff of the Commission had extensive written communications with other federal agencies, including DOJ and DHS.

22.     Following production of the *Vaughn* index, the defendants in the PACEI Litigation continued to take the position that the Commission is entitled to operate in complete secrecy and the defendants are not required to make any Commission records available to the public pursuant to FACA.

---

[12] Pam Fessler, *Tension And Protests Mark Trump Voting Commission Meeting*, NPR, Sept. 12, 2017, https://www.npr.org/2017/09/12/550518986/tension-and-protests-mark-trump-voting-commission-meeting.

[13] Dell Cameron, *Jeff Sessions Was Lobbied to Exclude Democrats From Trump's Election Fraud Panel*, Gizmodo, Sept. 12, 2017, https://gizmodo.com/jeff-sessions-was-lobbied-to-exclude-democrats-from-tru-1804006784.

23.     On information and belief, DOJ and DHS personnel engaged in other external and internal communications about the Commission and its activities beyond those identified on the *Vaughn* index.

24.     The activities of the Commission have generated extensive public interest and media scrutiny.  They have also become embroiled in legal controversy.  The Government Accountability Office announced in October 2017 that it would investigate the Commission's use of federal funds to support the Commission's work and whether the Commission was following federal regulations.[14]  And in November, Commission member Matthew Dunlap sued the Commission under the Federal Advisory Committee Act for refusing to provide documents to him that other Commissioners had purportedly received.[15]

25.     On January 3, 2018, President Trump dissolved the Commission.[16]  In announcing its dissolution, the White House Press Secretary announced that the President "has asked the Department of Homeland Security to review [the Commission's] initial findings and determine next courses of action."[17]  The following day, the White House Press Secretary stated "we are going to send the preliminary findings from the commission to the Department of Homeland

---

[14] October 25, 2017 Letter from K. Siggerud, U.S. Government Accountability Office to Sen. M. Bennett, available at https://www.scribd.com/document/362680901/GAO-Acceptance-of-Voter-Commission-Investigation.

[15] *See Dunlap v. Presidential Advisory Commission on Election Integrity et al.*, No. 17-cv-2361-CKK (D.D.C.).

[16] Executive Order 13820, 83 FR 969 (Jan. 3, 2018).

[17] *Statement by the Pres Secretary on the Presidential Advisory Commission on Election Integrity*, Jan. 3, 2018, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/.

Security and make determinations on the best way forward . . . ."[18]  And Vice Chair Kobach

stated that "what's happening is a tactical shift where the mission of the commission is being

handed off to Homeland Security . . . I'll be working closely with the White House and DHS to

ensure the investigations continue."[19]  Kobach also stated that it "became clear that the better

way to move forward would be to have the Department of Homeland Security do it . . . DHS

knows all the people who have green cards.  DHS knows the identity of all the people who have

temporary visas, and they also know the identity of illegal aliens who are in removal proceedings

. . . I'll be working with the Department of Homeland Security and with the White House as the

investigations continue within the executive branch."[20]

     26.    Given the pervasive secrecy surrounding the Commission, and the Commission's

continued refusal to disclose information pertaining to it, it is critically important that the

activities of DOJ and/or DHS in relation to the Commission be disclosed to the public.

    **B.    The Lawyers' Committee's FOIA Request to DOJ**

     27.    On August 10, 2017, the Lawyers' Committee submitted a FOIA request to the

Department of Justice Office of Information Policy ("OIP") and the Solicitor General's Office

("SG") (*see* Ex. C), seeking, among other records, documents relating to or reflecting efforts to

coordinate the Commission's activities with DOJ, DOJ's efforts to obtain and supply voter data

---

[18] *Press Briefing by Press Secretary Sarah Sanders*, Jan. 4, 2018,
https://www.whitehouse.gov/briefings-statements/press-briefing-by-press-secretary-sarah-sanders01042018/

[19] John Binder, *Kris Kobach: Voter Fraud Commission 'Being Handed Off to DHS' Breitbart News*, Jan. 3, 2018, http://www.breitbart.com/big-government/2018/01/03/exclusive-kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-be-stonewalled-by-dems/

[20] *Kris Kobach on What Led to the Disbandment of Controversial Election Commission*, NPR, Jan. 4, 2018, https://www.npr.org/2018/01/04/575774092/kris-kobach-on-what-led-to-the-disbandment-of-controversial-election-commission

to the Commission, and the SG's reversal of legal positions in *Husted v. A. Phillip Randolph Institute*, No. 16-980 (2016), a case currently pending before the United States Supreme Court.

    28.    More specifically, the August 10, 2017 FOIA request to OIP/SG sought:

    1.    All records containing, reflecting, documenting, summarizing, or otherwise relating to communications (including emails, telephone call logs, calendar entries, meeting agendas, or any other records reflecting communications) since January 20, 2017, between any employee of your agency and any of the following individuals:

    a.    Kris Kobach
    b.    J. Kenneth Blackwell
    c.    Hans von Spakovsky
    d.    J. Christian Adams
    e.    Andrew Kossack
    f.    H. Christopher Coates
    g.    Robert Popper
    h.    Any employees or agents of the Public Interest Law Foundation (including anyone with an email address ending in @publicinterestlegal.org).
    i.    Any employees or agents of the American Civil Rights Union (including anyone with an email address ending in @theacru.org).
    j.    Any employees or agents of Judicial Watch (including anyone with an email address ending in @judicialwatch.org).

    2.    All records containing, reflecting, documenting, summarizing, or otherwise relating to communications (including emails, telephone call logs, calendar entries, meeting agendas, or any other records reflecting communications) since January 20, 2017, between any employee of your agency and any employee of the Ohio Attorney General's Office (including anyone with an email address ending in @OhioAttorneyGeneral.gov) as it pertains to *Husted v. A. Phillip Randolph Institute*.

    29.    DOJ has agency records responsive to this request.

    30.    The Lawyers' Committee requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(b) & (e)(1)(iv).

    31.    The Lawyers' Committee also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k).

32.    On August 16, 2017, OIP acknowledged receipt of the August 10, 2017 request

on behalf of the Offices of the Attorney General and Deputy Attorney General and assigned the

request case reference numbers DOJ-2017-005986 (AG) and DOJ-2017-006057 (DAG).  *See* Ex.

D.

33.    On September 18, 2017, the SG acknowledged receipt of the August 10, 2017

request and assigned it the case reference number DOJ-2017-126879.  *See* Ex. E.

34.    On September 29, 2017, the PACEI Litigation defendants produced the *Vaughn*-

type index ordered by Judge Kollar-Kotelly listing documents collected from Commission

members and staff related to the Commission's work.  *See* Dkt. 33-3, No. 1:17-cv-1354-CKK

(D.D.C.).  The index lists multiple documents reflecting communications between DOJ and

Commission members and/or staff.

- Entry 541: "Email exchange re: Chicago Board of Election," (DOJ official to Commissioner McCormick, dated 5/15/17)

- Entry 544: "Email exchange discussing voting issue with attachment" (DOJ official to Commissioner McCormick, dated 7/5/17-7/6/17)

- Entry 564: "E-mail forwarding link to news article" (DOJ official to Commissioner McCormick, dated 9/15/17)

- Entry 565: "Email exchange discussing Chicago voting issue (Third party to DOJ official and Commissioner McCormick, dated 9/6/27, 9/11/17)

- Entry 687: "Email about setting up time to speak" (Kossack to DOJ official, dated 6/15/17)

- Entry 738: " Email chain and planner setting a time for call [related to litigation]" (Kossack DHS Official and Staff and DOJ, dated 8/1/17)

- Entry 741: "Email chain and planner setting a time for call [related to litigation]" (DHS Official to Kossack, DHS, and DOJ, dated 8/2/17)

- Entry 748: "Email re: collecting data from non-state entities (chain)" (Kossack to DOJ, dated 8/22/17)

35.    In Congressional testimony on October 18, 2017, Attorney General Sessions admitted in response to questioning that DOJ had "been asked for assistance on several issues" by the Commission.

36.    On October 20, 2017, the Lawyers' Committee contacted DOJ regarding case reference numbers DOJ-2017-005986 and DOJ-2017-006057.  The Lawyers' Committee identified specific communications responsive to its FOIA request that were identified by DOJ attorneys in the *Vaughn*-type index and provided a copy of the full index.  *See* Exs. F.

37.    On October 31, 2017, the Lawyers' Committee asked OIP for a status update in light of the *Vaughn*-type index the Lawyers' Committee provided.  *See* Ex. G.

38.    On November 1, 2017, OIP refused to provide the Lawyers' Committee with a date by which it would produce documents responsive to the Lawyers' Committee's request. OIP stated that it did not have access to the documents identified in the *Vaughn*-type index, notwithstanding the fact that the DOJ lawyers defending the PACEI lawsuit had the documents when they prepared the *Vaughn*-type index.  OIP also stated that it was still processing the Lawyers' Committee's request on behalf of the Office of the Attorney General and the Office of the Deputy Attorney General but that the email search process tends to take three to four months, or longer.  *See* Exs. H.

39.    Also on November 1, 2017, OIP informed the Lawyers' Committee that it was denying its request for expedited processing of its FOIA request with respect to case reference numbers DOJ-2017-005986 (AG) and DOJ-2017-006057 (DAG).  OIP did not provide a reason for denying the request for expedited processing.  *See* Ex. I.

40.    Neither of the DOJ entities has informed the Lawyers' Committee whether or not it will grant its fee waiver request.

41.     Pursuant to FOIA, within 20 business days of receipt of the Lawyers' Committee's request—that is, August 30, 2017—DOJ was required to "determine . . . whether to comply with such request" and to "immediately notify" the Lawyers' Committee of "such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).

42.     DOJ's obligations under FOIA are independent of any obligations the Commission has under the Federal Advisory Committee Act. FOIA and FACA have different standards for disclosure. Any and all documents in DOJ's possession are subject to FOIA. And to the extent that DOJ has documents that are not also in the Committee's possession, they are not at issue in the PACEI Litigation.

43.     Notwithstanding its statutory obligation to make a determination of the Lawyers' Committee's FOIA request within 20 working days, OIP and the SG have failed to produce any materials in response to that request or provide a determination whether OIP or SG will provide documents in response to the request.

44.     Through DOJ's failure to respond within the statutory time limit, the Lawyers' Committee has constructively exhausted its administrative remedies and seeks immediate judicial review.

45.     The Lawyers' Committee intends to share any documents transmitted via FOIA with the public (subject to any and all appropriate redactions of personal information), and to provide information and analysis about those documents as appropriate.

### C.     The Lawyers' Committee's FOIA Request to DHS

46.     On information and belief, DHS has documents relating to the Commission, including documents regarding Vice Chair Kobach's to coordinate the Commission's activities with DHS, and documents relating to the transfer of responsibilities from the Commission to DHS following the Commission's termination.

47.     The *Vaughn*-type index produced on September 29, 2017 in the PACEI Litigation lists multiple documents reflecting communications between DHS and Commission members, including:

- Entry 365: "Email about setting up call with DHS," (Kossack to DHS official, dated 6/19/17)

- Entry 383: "Email chain about potential partnership opportunities with DHS," (Kossack to Kobach and OVP staff, dated 6/28/2017)

- Entry 384: "Follow-up email with DHS official," (Kossack to DHS official, dated 6/28/2017)

- Entry 445: "Email chain re: availability for call with DHS," (Kossack to Kobach, dated 7/20/2017 to 7/24/2017)

- Entry 447: "Email re: draft follow up letter to states re: data collection (with attachment)," (Kossack to Kobach, dated 7/24/2017)

- Entry 472: "Email chain re: phone call with Kobach, OVP, and DHS staff," (Kossack to DHS staff and Kobach, dated 8/22/2017)

- Entry 475: "Email re: phone number for DHS call," (Kossack to Kobach, dated 8/24/2017)

- Entry 681: "Email chain from DHS requesting information about the scope of the Commission's work," (DHS to OVP Counsel, dated 5/12/2017)

- Entry 682: "Email chain re: scheduling a telephone call," (DHS to OVP Counsel, dated 5/15/2017 to 5/16/2017)

- Entry 689: "Email about setting up time to talk about Commission," (Counsel to OVP to DHS, Kossack, dated 6/19/2017 to 6/20/2017)

- Entry 693: "Planner for call with DHS personnel," (Kossack to DHS personnel, OVP staff, Kobach, dated 6/21/2017)

- Entry 701: "Follow up scheduling email with DHS personnel," (Kossack to DHS staff, dated 6/28/2017)

- Entry 703: "Follow-up email re: getting response," (DHS official to Kossack, dated 7/1/2017)

- Entry 705: "Email about potential future coordination/overlap between entities," (DHS to OVP staff, OVP counsel, EOP, dated 7/6/2017)

- Entry 706: "Email re: setting up time to talk," (DHS official to OVP counsel, Kossack, dated 7/6/2017)

- Entry 711: "Email discussion about time for meeting," (OVP counsel to DHS official, dated 7/8/2017)

- Entry 735: "Scheduling call," (Kossack to DHS official, OVP staff, OVP counsel, dated 7/25/2017)

- Entry 738: "Email chain and planner setting a time for call [relating to litigation]," (Kossack to DHS official and staff, DOJ, dated 8/1/2017)

- Entry 739: "Call about litigation," (Kossack to DHS, dated 8/1/2017)

- Entry 741: "Email chain and planner setting a time for call [relating to litigation]," (DHS official to Kossack, DHS, DOJ, dated 8/2/2017)

- Entry 742: "Email chain and planner setting a time for call [related to litigation]," (Kossack to DHS official, dated 8/3/2017)

- Entry 744: "Email chain and planner setting a time for call," (Kossack to DHS official, OVP, dated 8/15/2017 to 8/16/2017)

- Entry 749: "Email chain and planner about setting up a time to speak," (Kossack to DHS official, Kobach, OVP, dated 8/17/2017)

48.    On October 24, 2017, the Lawyers' Committee sent a FOIA request to DHS, seeking, among other records, documents relating to or reflecting efforts to coordinate the Commission's activities with DHS, as well as the Commission's efforts to obtain or utilize data collected by DHS,

49.    More specifically, the Lawyers' Committee October 24, 2017 FOIA request to DHS sought (*see* Ex. J):

1.    All records containing, reflecting, documenting, summarizing, or otherwise relating to communications identified in the *Vaughn*-type index (Ex. A hereto) entry Nos. 365, 383, 384, 445, 447, 472, 475, 681, 682, 689, 693, 701, 703, 705, 706, 711, 735, 738, 739, 741, 742, 744, and 749.

2.    Any other records containing, reflecting, documenting, summarizing, or otherwise relating to communications since January 20, 2017, between any employee of your agency and any of the following individuals:

    a.      Kris Kobach, including but not limited to emails that include the email addresses kkobach@gmail.com and kris@kriskobach.com

    b.      Connie Lawson, including but not limited to emails that include the email address connie@lawsonandco.com

    c.      Bill Gardner, including but not limited to emails that include the email address chipkate@aol.com

    d.      Matthew Dunlap, including but not limited to emails that include the email address mattdunlap47@gmail.com

    e.      J. Kenneth Blackwell, including but not limited to emails that include the email address kennethblackwell693@gmail.com

    f.      Hans von Spakovsky, including but not limited to emails that include the email address Hans.VonSpakovsky@heritage.org

    g.      Christy McCormick, including but not limited to emails that include the email address cacm@aol.com

    h.      David Dunn, including but not limited to emails that include the email address david@capitolpartnersar.com

    i.      Mark Rhodes, including but not limited to emails that include the email address mrhodes@woodcountywv.com

    j.      Alan King, including but not limited to emails that include the email address aking2322@gmail.com

    k.      J. Christian Adams, including but not limited to emails that include the email address adams@electionlawcenter.com

    l.      Andrew Kossack

    m.    Mark Paoletta

    n.      Matthew Morgan

    o.      Ronald Williams

    p.      Deniz Baykin

    q.      Any other Commission staff members

3.      Any other records of your agency, including but not limited to internal communications, communications with other federal agencies, and communications with third parties, that reference the individuals in Request (2) or the Commission itself by name.

50.      The Lawyers' Committee requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(1)(iv).

51.      The Lawyers' Committee also requested a fee waiver pursuant to 28 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).

52.      DHS acknowledge receipt of the October 24, 2017 request on November 6, 2017, and assigned it the case reference number 2018-HQFO-00143.  In a letter dated that same day,

DHS asked the Lawyers' Committee to provide it with a list of email accounts it wished DHS to search.  Ex. K.

53.     The Lawyers' Committee followed up with DHS via a telephone call on November 7, 2017.  In that call, the Lawyers' Committee informed DHS that the documents referenced in the *Vaughn*-type index were in the possession of the DOJ Civil Division lawyers defending the PACEI litigation.  The Lawyers' Committee also provided DHS with a description of the offices and/or personnel whose records should be searched; in particular, the Lawyers' Committee informed DHS that records responsive to the Lawyers' Committee FOIA request were likely located in the DHS's front office and in the possession of senior DHS political appointees.

54.     Given the subject nature of the communications and the wide publicity the Commission has garnered, the likely recipients of the requested communications are readily ascertainable to DHS and would include members of the Secretary's front office and/or senior political appointees to DHS, including the following individuals:

- John Barsa, Deputy Assistant Secretary for Office of Partnership and Engagement
- Luke Beckman, Deputy White House Liaison
- Kevin Carroll, Special Advisor to the Secretary
- Tiffany Cissna, White House Liaison
- Elaine C. Duke, both in her capacity as Acting Secretary of Homeland Security and as Deputy Secretary of Homeland Security,
- Jon Feere, Senior Advisor to Director of Immigrant and Customs Enforcement
- Katherine Gorka, Advisor to Chief of Staff
- Eugene Hamilton, former Special Advisor to the DHS Secretary
- John F. Kelly, former Secretary
- Julie Kirschner, Citizenship and Immigration Services Ombudsman
- Kathy Kovarik, Chief, Office of Policy and Strategy, Citizenship and Immigration Services
- Scott Krause, Executive Secretary
- Joseph B. Maher, Acting General Counsel
- Alan Meltzler, Deputy Chief of Staff
- James Nealon, Acting Under Secretary, Office of Strategy, Policy, and Plans

- Emily Newman, Deputy Chief of Staff
- Kristjen M. Nielsen, both in her capacity as former Secretary Kelly's Chief of Staff and in her current capacity as Secretary
- James Norton, Deputy Chief of Staff
- Cameron Quinn, Director DHS Office of Civil Rights and Civil Liberties
- Lora Ries, Chief of Staff, Citizenship and Immigration Services
- Dimple Shah, Advisor & Deputy General Counsel
- Craig Symons, Advisor to Secretary
- Miles Taylor, former Counselor to Acting Secretary
- Chad Wolf, Acting Chief of Staff
- Frank Wuco, Senior White House Advisor

55.     On December 26, 2016, DHS informed the Lawyers' Committee that DHS was administratively closing the FOIA request because the Lawyers' Committee purportedly had not provided adequate information to conduct a search.  *See* Ex. L.

56.     Pursuant to FOIA, within 20 business days of receipt of the Lawyers' Committee's request—that is, December 4, 2017—DHS was required to "determine . . . whether to comply with such request" and to "immediately notify" the Lawyers' Committee of "such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)(i).

57.     Also pursuant to FOIA, an "agency shall withhold information under this section only if" covered by an express exemption or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A).

58.     DHS obligations under FOIA are independent of any obligations the Commission has under FACA.  FOIA and FACA have different standards for disclosure.  Any and all documents in DHS' possession are subject to FOIA.  And to the extent that DHS has internal DHS documents or other materials that are not also in the Committee's possession, they are not at issue in the PACEI Litigation.

59.     Notwithstanding its statutory obligations, DHS (i) failed to produce any materials within the statutorily required time frame, and (ii) is improperly withholding information called for by the request.

60.     Through DHS's failure to produce responsive documents within the statutory time limit, the Lawyers' Committee has exhausted its administrative remedies and seeks immediate judicial review.

61.     The Lawyers' Committee intends to share any documents transmitted via FOIA with the public (subject to any and all appropriate redactions of personal information), and to provide information and analysis about those documents as appropriate.

## COUNT I

62.     The Lawyers' Committee re-alleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.     Defendants are in violation of FOIA by failing to respond to the Lawyers' Committee's requests within the statutorily prescribed time limit and by unlawfully withholding records responsive to the Lawyers' Committee's request.

## PRAYER FOR RELIEF

**WHEREFORE**, the Lawyers' Committee requests that the Court:

a.   Order Defendants, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to the Lawyers' Committee's request;

b.   Order Defendants, by a date certain, to disclose all non-exempt records responsive to the Lawyers' Committee's FOIA requests, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

c.   Order Defendants to grant the Lawyers' Committee's request for a fee waiver;

d.   Award the Lawyers' Committee its costs, attorneys' fees, and other disbursements

for this action; and

e.   Grant any other relief that this Court deems appropriate.

DATED:  January 26, 2018

Respectfully Submitted,


/s/ John A. Freedman

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
Ezra D. Rosenberg (D.C. Bar # 360927)
Marcia Johnson-Blanco (D.C. Bar # 495211)
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW
Washington, DC  20005
Telephone:  +1 202.662.8600
Facsimile:  +1 202.783.0857
erosenberg@lawyerscommittee.org

John A. Freedman (D.C. Bar No. # 453075)
Robert N. Weiner (D.C. Bar # 298133)
Eric A. Rubel (D.C. Bar 405421)
David J. Weiner (D.C. Bar # 499806)
R. Stanton Jones (D.C. Bar # 987088)
Daniel F. Jacobson (D.C. Bar # 1016621)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001
Telephone:  +1 202.942.5000
Facsimile:  +1 202.942.5999
John.Freedman@apks.com

Kathryn W. Hutchinson
ARNOLD & PORTER KAYE SCHOLER LLP
44th Floor
777 South Figueroa Street
Los Angeles, CA  90017-5844
Telephone:  +1 213.243.4000
Facsimile:  +1 213.243.4199

Counsel for Plaintiff Lawyers' Committee
for Civil Rights Under Law