**IN THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW,

          Plaintiff,

   v.

U.S. DEPARTMENT OF JUSTICE and
U.S. DEPARTMENT OF HOMELAND SECURITY,

         Defendants.

No. 1:18-CV-167-EGS

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................... 1

FACTS AND PROCEDURAL BACKGROUND ............................................................. 2

I.      The Presidential Advisory Commission on Election Integrity ............................ 2

II.     The Lawyers' Committee's FOIA Requests ....................................................... 6

        A.      DOJ ........................................................................................................ 6

        B.      DHS ........................................................................................................ 8

STANDARD OF REVIEW ............................................................................................ 10

ARGUMENT ................................................................................................................. 13

I.      DEFENDANTS' AFFIDAVITS CONFIRM THEIR SEARCHES WERE
        INADEQUATE ......................................................................................... 13

        A.      Legal Standard for Reasonableness of Agency's Search ...................... 13

        B.      DHS's Search Was Inadequate ............................................................. 13

        C.      DOJ-OIP's Search Was Inadequate ...................................................... 17

        D.      DOJ-OSG's Search Was Inadequate ..................................................... 19

II.     DEFENDANTS' EXEMPTION 5 WITHHOLDINGS EITHER ARE INVALID OR
        LACK MERIT ........................................................................................... 20

        A.      The Exemption 5 Standard .................................................................... 20

        B.      Exemption 5 Does Not Apply to DOJ-OSG's Communications with the Ohio
                Attorney General's Office ...................................................................... 22

        C.      DHS Fails to Adequately Justify Its Exemption 5 Withholdings ......... 25

        D.      This Court Should Order In Camera Review ......................................... 28

III.    DEFENDANTS IMPROPERLY WITHHELD INFORMATION UNDER
        EXEMPTION 6 ......................................................................................... 29

        A.      The Exemption 6 Standard .................................................................... 29

B.    Exemption 6 Is Not A Blanket Exemption for the Names of Federal
      Employees ......................................................................................................... 30

CONCLUSION ......................................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Reports v. Dept. of Justice,*
  926 F.2d 1192 (D.C. Cir. 1991) .................................................................................32

*Am. Mgmt. Servs., LLC v. Dep't of the Army,*
  703 F.3d 724 (4th Cir. 2013) ....................................................................................24

*Baez v. Dep't of Justice,*
  647 F.2d 1328 (D.C. Cir. 1980) .................................................................................30

*Bigwood v. U.S. Agency for Int'l Dev.,*
  484 F. Supp. 2d 68 (D.D.C. 2007) ......................................................................12, 29

*Brennan Ctr. For Justice v. Dep't of Justice,*
  697 F.3d 184 (2d Cir. 2012) ................................................................................21, 22

*Carter v. Dep't of Commerce,*
  830 F.2d 388 (D.C. Cir. 1987) ............................................................................12, 31

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Engineers,*
  722 F. Supp. 2d 66 (D.D.C. 2010) ......................................................................23, 24

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) .................................................................................27

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep.,*
  237 F. Supp. 2d 17 (D.D.C. 2002) ............................................................................23

*Dep't of the Air Force v. Rose,*
  425 U.S. 352 (1976) ............................................................................................29, 30

*Dep't of Defense v. Fed. Labor Relations Auth.,*
  510 U.S. 487 (1994) .................................................................................................10

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ..........................................................................................22, 23, 24

*Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) .............................................................................................1, 29

*Dep't of Justice v. Tax Analysts,*
  492 U.S. 136 (1989) .................................................................................................10

*Edmonds Inst. v. Dep't of Interior,*
  383 F. Supp. 2d 105 (D.D.C. 2005) ....................................................................21

*Electronic Frontier Foundation v. U.S. Dept. of Justice,*
  826 F. Supp. 2d 157 (D.D.C. 2011) ....................................................................32

*Founding Church of Scientology v. Bell,*
  603 F.2d 945 (D.C. Cir. 1979) ...........................................................................12

*Gilman v. U.S. Dep't of Homeland Security,*
  32 F. Supp. 3d 1 (D.D.C. 2014) ....................................................................29, 30

*Goland v. CIA,*
  607 F.2d 339 (D.C. Cir.1978) ............................................................................11

*Goldberg v. Dep't of State,*
  818 F.2d 71 (D.C. Cir. 1987) .............................................................................11

*Hall v. Dep't of Justice,*
  552 F. Supp. 2d 23 (D.D.C. 2008) .................................................................12, 31

*Husted v. A. Philip Randolph Institute,*
  138 S. Ct. 1833 (2018) .............................................................................. *passim*

*Judicial Watch, Inc. v. FDA,*
  449 F.3d 141 (D.C. Cir. 2006) ...........................................................................12

*Judicial Watch, Inc. v. U.S. Postal Service,*
  297 F. Supp. 2d 252 (D.D.C. 2004) ....................................................................27

*Lesar v. U.S. Dep't of Justice,*
  636 F.2d 472 (D.C. Cir. 1980) .......................................................................30, 31

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB,*
  845 F.2d 1177 (2d Cir. 1988) .............................................................................11

*Long v. Dep't of Justice,*
  450 F. Supp. 2d 42 (D.D.C. 2006) ......................................................................20

*McCutchen v. U.S. Dep't of Health & Human Servs.,*
  30 F.3d 183 (D.C. Cir. 1994) .............................................................................29

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) ...........................................................................11

*Multi Ag Media LLC v. Dep't of Agric.,*
  515 F.3d 1224 (D.C. Cir. 2008) .....................................................................29, 31

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ................................................................................1

*Nat'l Ass'n of Home Builders v. Norton*,
   309 F.3d 26 (D.C. Cir. 2002) .............................................................11

*Nation Magazine v. United States Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) .............................................................16

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) .............................................................................1

*Oglesby v. Dep't of the Army*,
   920 F.2d 57 (D.C. Cir. 1990) .............................................................16

*People for Am. Way Found. v. Nat'l Park Serv.*,
   503 F. Supp. 2d 284 (D.D.C. 2007) ..................................................29

*Physicians Comm. For Responsible Med. v. Nat'l Institutes of Health*,
   326 F. Supp. 2d 19 (D.D.C. 2004) ....................................................23

*Property of People v. Dep't of Justice*,
   310 F. Supp. 3d 57 (D.D.C. 2018) ....................................................11

*Quinon v. FBI*,
   86 F.3d 1222 (D.C. Cir. 1996) ..........................................................28

*Ripskis v. Dep't of Hous. & Urban Dev.*,
   746 F.2d 1 (D.C. Cir. 1984) ...............................................................29

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir.1991) ..........................................................11

*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984) .............................................................24

*Spirko v. U.S. Postal Service*,
   147 F.3d 992 (D.C. Cir. 1998) ..........................................................28

*Steinberg v. Dep't of Justice*,
   23 F.3d 548 (D.C. Cir. 1994) .............................................................13

*Trea Senior Citizens League v. U.S. Dep't of State*,
   923 F. Supp. 2d 55 (D.D.C. 2013) ....................................................28

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) .....................................................13, 17

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ........................................................................11

*Wilderness Soc'y v. Dep't of Interior*,
    344 F. Supp. 2d 1 (D.D.C. 2004) ...................................................................21

**Statutes**

5 U.S.C. § 552 .........................................................................................................1

5 U.S.C. § 552(a)(4)(B) ..............................................................................10, 28

5 U.S.C. § 552(b) .........................................................................................10, 26

5 U.S.C. § 552(b)(5) ..........................................................................................20

5 U.S.C. § 552(b)(6) ..........................................................................................29

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................11

**Regulations**

Exec. Order 13799, 82 FR 22389 (May 11, 2017) ................................................2

Exec. Order 13820, 83 FR 969 (Jan. 3, 2018) ......................................................5

**Other Authorities**

Bryan Lowry, *Kris Kobach wants every U.S. voter's personal information for*
    *Trump's commission*, June 29, 2017, Kansas City Star,
      http://www.kansascity.com/news/politics-government/article158871959.html ......................3

Pam Fessler, *Advocates Worry Trump Administration Wants To Revamp Motor*
    *Voter Law*, NPR, July 8, 2017,
      https://www.npr.org/2017/07/08/536006813/advocates-worry-trump-
      administration-wants-to-revamp-motor-voter-law ...................................................4

President Announces Formation of Bipartisan Presidential Commission on
    Election Integrity, White House (May 11, 2017),
      https://www.whitehouse.gov/briefings-statements/president-announces-
      formation-bipartisan-presidential-commission-election-integrity/ ..........................................3

Presidential Advisory Commission on Election Integrity, Meeting Minutes at 5,
    July 19, 2017,
      https://www.whitehouse.gov/sites/whitehouse.gov/files/documents/Minutes%
      20for%20July%2019%2C%202017%20Public%20Meeting.pdf ..............................4

Presidential Advisory Commission on Election Integrity, White House (July 13, 2017), https://www.whitehouse.gov/articles/presidential-advisory-commission-election-integrity/ .................................................................................................3

*Press Briefing by Press Secretary Sarah Sanders*, Jan. 4, 2018, https://www.whitehouse.gov/ briefings-statements/press-briefing-by-press-secretary-sarah-sanders01042018/ ...........................................................................5

Sam Levine, *This DOJ Letter May Be More Alarming Than Trump Commission's Request For Voter Data*, HuffPost, July 5, 2017, http://www.huffingtonpost.com/entry/department-of-justice-voter-purge_us_595d22b1e4b0da2c7326c38b ...................................................................4

*Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity*, Jan. 3, 2018, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/ .......................................................................................5

## INTRODUCTION

This suit concerns the Government's failure to abide by basic requirements of openness and transparency.  Plaintiff Lawyers' Committee for Civil Rights Under Law (the "Lawyers' Committee") brought this suit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to compel the Defendant agencies—the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ")—to produce documents evidencing their interactions with the "Pence-Kobach" Presidential Advisory Commission on Election Integrity ("PACEI") following PACEI's disclosure in parallel litigation that it had extensive contacts with these agencies.  The Lawyers' Committee further sought documents from DOJ evidencing its interactions with the Ohio Attorney General's office related to the Trump Administration's 180-degree reversal of position from opposing to supporting the State of Ohio in a significant voting rights litigation, *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833 (2018).

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Or as put more bluntly in another Supreme Court decision, FOIA protects the right of all Americans to know "*what their government is up to.*"  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (emphasis in original).  "This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004).  During its entire existence, PACEI operated under a cloud of pervasive secrecy, in violation of federal law, refusing to make almost all of its records available to the public.  DOJ similarly refused to explain its sudden reversal of

litigation position in the *Husted* litigation.  Through their stonewalling in this litigation, DHS and DOJ have perpetuated this effort to conceal the truth from the public.

It is evident from the Defendants' motion for summary judgment and supporting materials that the Defendants have failed to locate and produce all materials responsive to the Lawyers' Committee's FOIA requests and are improperly withholding others on the basis of inappropriate invocations of FOIA exemptions.   For instance, Defendants withhold communications with the Ohio Attorney General's Office on the premise that the State of Ohio was acting as a "consultant" to OSG, despite controlling Supreme Court precedent holding that the federal government's communications with a separate sovereign that is pursuing its own self-interests—as the Ohio Attorney General's Office was here—cannot be withheld under Exemption 5's "consultant corollary."   What's more, the Defendants' papers reflect that Defendants have committed the most basic derelictions under FOIA—failing to perform adequate searches for all responsive records, including the failure to search for and produce records specifically identified in the Lawyers' Committee's requests.  These actions deprive the public of its right to know what their Government is up to.

The Defendants' motion for summary judgment should be denied.  Plaintiff should be granted summary judgment and the Defendants ordered to produce the specified documents and complete the identification and production of responsive materials.

## FACTS AND PROCEDURAL BACKGROUND

**I.        The Presidential Advisory Commission on Election Integrity**

On May 11, 2017, President Trump established the Commission by Executive Order and appointed Vice President Pence to serve as its Chair.  Exec. Order 13799, 82 FR 22389 (May 11,

2017).  President Trump named Kansas Secretary of State Kris Kobach as Vice Chair of the Commission.[1]  The other members of the Commission were Connie Lawson (Indiana Secretary of State), Bill Gardner (New Hampshire Secretary of State), Matthew Dunlap (Maine Secretary of State), Ken Blackwell (former Ohio Secretary of State), Christy McCormick (Commission, Election Assistance Commission), Mark Rhodes (Clerk of Wood County, West Virginia), Hans von Spakovsky (Senior Legal Fellow, Heritage Foundation), J. Christian Adams (President and General Counsel, Public Interest Legal Foundation), David Dunn (former Arkansas State Representative), and Alan King (Probate Judge, Jefferson County, Alabama).[2]

On June 28, 2017, Vice Chair Kobach sent a letter to officials of all 50 states requesting that they provide the Commission with personal information of registered voters, including their full names, addresses, dates of birth, voting history, and the last four digits of their Social Security numbers.[3]  Also on June 28, 2017, T. Christian Herren, Jr., Chief of the Voting Section of DOJ's Civil Rights Division, sent a letter to the chief election officials of all 50 states requesting that they provide "information regarding [each] State's procedures for compliance with the statewide voter registration list maintenance provisions of the National Voter

---

[1]  President Announces Formation of Bipartisan Presidential Commission on Election Integrity, White House (May 11, 2017), https://www.whitehouse.gov/briefings-statements/president-announces-formation-bipartisan-presidential-commission-election-integrity/

[2]  *See* Presidential Advisory Commission on Election Integrity, White House (July 13, 2017), https://www.whitehouse.gov/articles/presidential-advisory-commission-election-integrity/.

[3]  Bryan Lowry, *Kris Kobach wants every U.S. voter's personal information for Trump's commission*, June 29, 2017, Kansas City Star, https://www.kansascity.com/news/politics-government/article158871959.html.

Registration Act ('NVRA')."[4]   The timing of these two letters has raised suspicion about undisclosed cooperation between DOJ and the Commission.[5]

On July 10, 2017, the Lawyers' Committee filed a complaint against the Commission and other government entities (who are not defendants in this suit) to enforce the disclosure obligations under the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. II.   *See Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity, et al.*, No. 1:17-cv-01354-CKK (D.D.C.) ("PACEI Litigation").   Throughout the PACEI Litigation, the defendants in that case maintained that they were only required to disclose a minimal number of Commission-related records under FACA.

The Commission held its first official meeting on July 19, 2017.  At the meeting, Vice Chair Kobach directed Commission staff to begin collecting data from other federal agencies relevant to the Commission's work.[6]   Commissioner von Spakovsky recommended that the Commission "should have access to . . . DHS data " in particular, in order to study (among other things) whether DHS was sharing information with DOJ.[7]   In response to a motion to compel filed by the Lawyers' Committee in the PACEI Litigation, on August 30, 2017, Judge Kollar-Kotelly ordered the defendants in the PACEI Litigation to produce a *Vaughn*-type index "detailing what specific documents have been collected with respect to the Commission to date,

---

[4] Sam Levine, *This DOJ Letter May Be More Alarming Than Trump Commission's Request For Voter Data*, HuffPost, July 5, 2017, http://www.huffingtonpost.com/entry/department-of-justice-voter-purge_us_595d22b1e4b0da2c7326c38b.

[5] Pam Fessler, *Advocates Worry Trump Administration Wants To Revamp Motor Voter Law*, NPR, July 8, 2017, https://www.npr.org/2017/07/08/536006813/advocates-worry-trump-administration-wants-to-revamp-motor-voter-law.

[6] Presidential Advisory Commission on Election Integrity, Meeting Minutes at 5, July 19, 2017, https://www.whitehouse.gov/sites/whitehouse.gov/files/documents/Minutes%20for%20July%2019%2C%202017%20Public%20Meeting.pdf

[7] *Id.*

which of those have been disclosed, and if they have not been disclosed, on what basis." Dkt. 28, No. 1:17-cv-01354-CKK (D.D.C.).

On September 29, 2017, defendants in the PACEI Litigation produced the *Vaughn*-type index ordered by Judge Kollar-Kotelly. Dkt. 33-3, No. 1:17-cv-01354-CKK (D.D.C.). The index indicates that members and staff of the Commission had extensive written communications with other federal agencies, including DOJ and DHS. *See* Exhibit A.

On January 3, 2018, President Trump dissolved the Commission.[8] In announcing its dissolution, the White House Press Secretary announced that the President "has asked the Department of Homeland Security to review [the Commission's] initial findings and determine next courses of action."[9] The following day, the White House Press Secretary stated "we are going to send the preliminary findings from the commission to the Department of Homeland Security and make determinations on the best way forward . . . ."[10]

The activities of the Commission have generated extensive public interest and media scrutiny. Compl. ¶24. They have also become embroiled in legal controversy. *See id.* Given the pervasive secrecy surrounding the Commission, and the Commission's refusal to disclose information pertaining to it, it is critically important that the activities of DOJ and/or DHS in relation to the Commission be disclosed to the public. The Lawyers' Committee intends to share any documents transmitted via FOIA with the public (subject to any and all appropriate

---

[8] Executive Order 13820, 83 FR 969 (Jan. 3, 2018).

[9] *Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity*, Jan. 3, 2018, https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/.

[10] *Press Briefing by Press Secretary Sarah Sanders*, Jan. 4, 2018, https://www.whitehouse.gov/briefings-statements/press-briefing-by-press-secretary-sarah-sanders01042018/

redactions of personal information), and to provide information and analysis about those documents as appropriate.

## II.         The Lawyers' Committee's FOIA Requests

### A.  DOJ

On August 10, 2017, the Lawyers' Committee submitted a FOIA request to DOJ-OIP and the DOJ-OSG seeking, among other records, documents relating to or reflecting efforts to coordinate the Commission's activities with DOJ, DOJ's efforts to obtain and supply voter data to the Commission, and the SG's reversal of legal positions in *Husted v. A. Philip Randolph Institute*, in the Supreme Court.  More specifically, the August 10, 2017 FOIA request to DOJ-OIP/DOJ-OSG sought:

>   1.   All records containing, reflecting, documenting, summarizing, or otherwise relating to communications (including emails, telephone call logs, calendar entries, meeting agendas, or any other records reflecting communications) since January 20, 2017, between any employee of your agency and any of the following individuals:
>
>       a.   Kris Kobach
>       b.   J. Kenneth Blackwell
>       c.   Hans von Spakovsky
>       d.   J. Christian Adams
>       e.   Andrew Kossack
>       f.   H. Christopher Coates
>       g.   Robert Popper
>       h.   Any employees or agents of the Public Interest Law Foundation (including anyone with an email address ending in @publicinterestlegal.org).
>       i.   Any employees or agents of the American Civil Rights Union (including anyone with an email address ending in @theacru.org).
>       j.   Any employees or agents of Judicial Watch (including anyone with an email address ending in @judicialwatch.org).
>
>   2.   All records containing, reflecting, documenting, summarizing, or otherwise relating to communications (including emails, telephone call logs, calendar entries, meeting agendas, or any other records reflecting communications) since January 20, 2017, between any employee of your agency and any employee of the Ohio Attorney General's Office (including anyone with an email address ending in

- 6 -

@OhioAttorneyGeneral.gov) as it pertains to *Husted v. A. Phillip Randolph Institute*.

Compl. Ex. C.  On August 16, 2017, DOJ-OIP acknowledged receipt of the August 10, 2017 request on behalf of the Offices of the Attorney General and Deputy Attorney General.  Compl. Ex. D.  On September 18, 2017, DOJ-OSG acknowledged receipt of the August 10, 2017 request.  Compl. Ex. E.

On September 29, 2017, the PACEI Litigation defendants produced the *Vaughn*-type index ordered by Judge Kollar-Kotelly listing documents collected from Commission members and staff related to the Commission's work.  *See* Exhibit B (Dkt. 33-3, No. 1:17-cv-1354-CKK (D.D.C.)).  The index lists multiple documents reflecting communications between DOJ and Commission members and/or staff.  On October 20, 2017, the Lawyers' Committee contacted DOJ-OIP and identified specific communications responsive to its FOIA request that were identified by DOJ attorneys in the *Vaughn*-type index and provided a copy of the full index.  *See* Compl. Ex. F.  In response, OIP stated that it did not have access to the documents identified in the *Vaughn*-type index, notwithstanding the fact that the DOJ lawyers defending the PACEI lawsuit had the documents when they prepared the *Vaughn*-type index.  DOJ-OIP also stated that it was still processing the Lawyers' Committee's request on behalf of the Office of the Attorney General and the Office of the Deputy Attorney General but that the email search process tends to take three to four months, or longer.  *See* Compl. Ex. H.

The Lawyer's Committee filed its complaint on January 26, 2018 (Doc. 1).  Despite the fact that the Lawyers' Committee provided DOJ-OIP and DOJ-OSG with a road map to locate responsive documents, at the time this suit was filed on January 26, 2018, neither had produced any records responsive to the Lawyer's Committee's requests.

DOJ-OIP produced records on June 1, 2018 and November 15, 2018. DOJ-OIP's productions failed to include the records the Lawyers' Committee specifically identified from the *Vaughn* type index from the PACEI Litigation. DOJ-OIP withheld or redacted various records subject to inapplicable FOIA exemptions and/or offered insufficient explanations for the undisclosed records.

DOJ-OSG produced records on June 1, 2018 and November 15, 2018. DOJ-OSG withheld or redacted various records subject to inapplicable FOIA exemptions and/or offered insufficient explanations for the undisclosed records.

### B. DHS

On October 24, 2017, the Lawyers' Committee sent a FOIA request to DHS, seeking, among other records, documents relating to or reflecting efforts to coordinate the Commission's activities with DHS, as well as the Commission's efforts to obtain or utilize data collected by DHS, including communications between DHS and Commission members expressly identified on the *Vaughn*-type index from the PACEI Litigation. More specifically, the Lawyers' Committee request sought:

> 1. All records containing, reflecting, documenting, summarizing, or otherwise relating to communications identified in the *Vaughn*-type index (Ex. A hereto) entry Nos. 365, 383, 384, 445, 447, 472, 475, 681, 682, 689, 693, 701, 703, 705, 706, 711, 735, 738, 739, 741, 742, 744, and 749.
>
> 2. Any other records containing, reflecting, documenting, summarizing, or otherwise relating to communications since January 20, 2017, between any employee of your agency and any of the following individuals:
>
>> a. Kris Kobach, including but not limited to emails that include the email addresses kkobach@gmail.com and kris@kriskobach.com
>> b. Connie Lawson, including but not limited to emails that include the email address connie@lawsonandco.com
>> c. Bill Gardner, including but not limited to emails that include the email address chipkate@aol.com
>> d. Matthew Dunlap, including but not limited to emails that include the email address mattdunlap47@gmail.com

e.  J. Kenneth Blackwell, including but not limited to emails that include the email address kennethblackwell693@gmail.com

f.  Hans von Spakovsky, including but not limited to emails that include the email address Hans.VonSpakovsky@heritage.org

g.  Christy McCormick, including but not limited to emails that include the email address cacm@aol.com

h.  David Dunn, including but not limited to emails that include the email address david@capitolpartnersar.com

i.  Mark Rhodes, including but not limited to emails that include the email address mrhodes@woodcountywv.com

j.  Alan King, including but not limited to emails that include the email address aking2322@gmail.com

k.  J. Christian Adams, including but not limited to emails that include the email address adams@electionlawcenter.com

l.  Andrew Kossack

m.  Mark Paoletta

n.  Matthew Morgan

o.  Ronald Williams

p.  Deniz Baykin

q.  Any other Commission staff members

3.  Any other records of your agency, including but not limited to internal communications, communications with other federal agencies, and communications with third parties, that reference the individuals in Request (2) or the Commission itself by name.

Compl. Ex. J.  On November 6, 2017, DHS acknowledge receipt the request and asked the Lawyers' Committee to provide it with a list of email accounts it wished DHS to search.  Compl. Ex. K.  The Lawyers' Committee followed up with DHS via a telephone call on November 7, 2017.  In that call, the Lawyers' Committee informed DHS that the documents referenced in the *Vaughn*-type index were in the possession of the DOJ Civil Division lawyers defending the PACEI litigation.  The Lawyers' Committee also provided DHS with a description of the offices and/or personnel whose records should be searched; in particular, the Lawyers' Committee informed DHS that records responsive to the Lawyers' Committee FOIA request were likely located in the DHS's front office and in the possession of senior DHS political appointees. Nevertheless, on December 26, 2017, DHS informed the Lawyers' Committee that DHS was

administratively closing the FOIA request because the Lawyers' Committee purportedly had not provided adequate information to conduct a search. *See* Compl. Ex. L.

The Lawyer's Committee filed its complaint on January 26, 2018 (Doc. 1). Despite the fact that the Lawyers' Committee provided DHS with a road map to locate responsive documents, at the time this suit was filed on January 26, 2018, DHS had not produced any records responsive to the Lawyer's Committee's requests.

DHS produced records on May 25, 2018 and June 28, 2018, and sent a confirmation letter that DHS had found no additional responsive records on July 27, 2018. DHS's various productions failed to include the records the Lawyers' Committee specifically identified from the *Vaughn* type index from the PACEI Litigation. DHS also failed to produce any documents from or relating to the Commission following the Commission's dissolution on January 3, 2018, notwithstanding statements from the President that he had directed DHS "to review [the Commission's] initial findings and determine next courses of action." *Supra* n.9. DHS withheld or redacted various records subject to inapplicable FOIA exemptions and/or offered insufficient explanations for the undisclosed records.

## STANDARD OF REVIEW

Agency determinations regarding the FOIA exemptions are reviewed *de novo*. 5 U.S.C. § 552(a)(4)(B). Consistent with the FOIA's presumption of public access to agency records, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought . . . have not been improperly withheld." *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (internal quotation marks omitted). An agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b); s*ee also Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994). "FOIA compels disclosure in every case

where the government does not carry its burden of convincing the court that one of the statutory exemptions apply." *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987). "[A]ll doubts" as to the applicability of an asserted exemption must be "resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). "At all times courts must bear in mind that FOIA mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quotations and citations omitted).

Summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Property of People v. Dep't of Justice*, 310 F. Supp. 3d 57, 63 (D.D.C. 2018).

In a FOIA case, while the Court may rely on information provided in affidavits or declarations, those affidavits or declarations must be "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir.1978).

"To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission

- 11 -

of a 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). The *Vaughn* Index and/or accompanying affidavits must "provide[] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotation marks omitted). The D.C. Circuit has noted three important elements for an adequate *Vaughn* index: (1) the index should be one document that is complete in itself, (2) the index must adequately describe the withheld documents or deletions, (3) the index must state the particular FOIA exemption, and explain why the exemption applies. *See Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

An agency's claims, in affidavits, declarations or a *Vaughn* Index may not "merely recite the statutory standards." *Carter v. Dep't of Commerce*, 830 F.2d 388, 392-393 (D.C. Cir. 1987). Where the agency's affidavits or declarations merely "parrot the language of the statute and are drawn in conclusory terms," the Court's and the opposing party's ability to conduct its own review of the agency's determinations is severely frustrated. *Id.* at 393 (quoting *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980)). "[B]road categorical descriptions" are inadequate to allow "a reviewing court to engage in a meaningful review of the agency's decision." *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008).

## ARGUMENT

### I.  DEFENDANTS' AFFIDAVITS CONFIRM THEIR SEARCHES WERE INADEQUATE

#### A.  Legal Standard for Reasonableness of Agency's Search

To win summary judgment on the adequacy of a search under FOIA, an agency must demonstrate "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  The Government thus bears the burden of showing that its search was calculated to uncover all relevant documents.  *See Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  The Government has not met its burden.

#### B.  DHS's Search Was Inadequate

The Holzer Declaration confirms DHS's searches were not reasonably calculated to uncover all relevant documents because, among other reasons, DHS failed produce records that the Lawyers' Committee specifically identified.  The Lawyers' Committee requested specific documents that had been listed on a *Vaughn*-type index provided by the Government in the then-existing FACA lawsuit regarding the PACEI.  The Lawyers' Committee sought:

> "1. All records containing, reflecting, documenting, summarizing, or otherwise relating to communications identified in the *Vaughn*-type index [submitted in the PACEI Litigation] (Ex. A hereto) entry ***Nos. 365, 383, 384, 445, 447, 472, 475, 681, 682, 689, 693, 701, 703, 705, 706, 711, 735, 738, 739, 741, 742, 744, and 749***.

Compl. ¶¶ 47-49; *id.* Ex. J (emphasis added).

These index numbers correspond to the following twenty-three separate entries on the *Vaughn*-type index produced in the PACEI Litigation:

- Entry 365: "Email about setting up call with DHS," (Kossack to **DHS official**, dated 6/19/17)

- 13 -

- Entry 383: "Email chain about potential partnership opportunities with DHS," (Kossack to Kobach and OVP staff, dated 6/28/2017)
- Entry 384: "Follow-up email with DHS official," (Kossack to **DHS official**, dated 6/28/2017)
- Entry 445: "Email chain re: availability for call with DHS," (Kossack to Kobach, dated 7/20/2017 to 7/24/2017)
- Entry 447: "Email re: draft follow up letter to states re: data collection (with attachment)," (Kossack to Kobach, dated 7/24/2017)
- Entry 472: "Email chain re: phone call with Kobach, OVP, and DHS staff," (Kossack to **DHS staff** and Kobach, dated 8/22/2017)
- Entry 475: "Email re: phone number for DHS call," (Kossack to Kobach, dated 8/24/2017)
- Entry 681: "Email chain from DHS requesting information about the scope of the Commission's work," (**DHS** to OVP Counsel, dated 5/12/2017)
- Entry 682: "Email chain re: scheduling a telephone call," (**DHS** to OVP Counsel, dated 5/15/2017 to 5/16/2017)
- Entry 689: "Email about setting up time to talk about Commission," (Counsel to OVP to **DHS**, Kossack, dated 6/19/2017 to 6/20/2017)
- Entry 693: "Planner for call with DHS personnel," (Kossack to **DHS personnel**, OVP staff, Kobach, dated 6/21/2017)
- Entry 701: "Follow up scheduling email with DHS personnel," (Kossack to **DHS staff**, dated 6/28/2017)
- Entry 703: "Follow-up email re: getting response," (**DHS official** to Kossack, dated 7/1/2017)
- Entry 705: "Email about potential future coordination/overlap between entities," (**DHS** to OVP staff, OVP counsel, EOP, dated 7/6/2017)
- Entry 706: "Email re: setting up time to talk," (**DHS official** to OVP counsel, Kossack, dated 7/6/2017)
- Entry 711: "Email discussion about time for meeting," (OVP counsel to **DHS official**, dated 7/8/2017)
- Entry 735: "Scheduling call," (Kossack to **DHS official**, OVP staff, OVP counsel, dated 7/25/2017)
- Entry 738: "Email chain and planner setting a time for call [relating to litigation]," (Kossack to **DHS official** and staff, DOJ, dated 8/1/2017)
- Entry 739: "Call about litigation," (Kossack to **DHS**, dated 8/1/2017)
- Entry 741: "Email chain and planner setting a time for call [relating to litigation]," (**DHS official** to Kossack, **DHS**, DOJ, dated 8/2/2017)
- Entry 742: "Email chain and planner setting a time for call [related to litigation]," (Kossack to **DHS official**, dated 8/3/2017)
- Entry 744: "Email chain and planner setting a time for call," (Kossack to **DHS official**, OVP, dated 8/15/2017 to 8/16/2017)
- Entry 749: "Email chain and planner about setting up a time to speak," (Kossack to **DHS official**, Kobach, OVP, dated 8/17/2017)

Compl. ¶¶ 47-49; *id.* Ex. J.

The Lawyers' Committee thus requested twenty-three specific records with known dates and senders and recipients. Yet remarkably, it does not appear that any of these twenty-three documents have been produced by DHS or is reflected on DHS' *Vaughn* index, even though the same Department of Justice attorneys who represented the Government in the PACEI Litigation represent DHS in this case. The Government offers no explanation for its failure to produce or even search for these documents in its brief or in the Holzer declaration; indeed, the Holzer declaration does not reflect that DHS did something as simple as ask its own litigation counsel for assistance in identifying or producing these 23 documents *See* Holzer Decl. ¶¶ 8-11. DHS appears to have simply ignored this aspect of the Lawyers' Committee request entirely. DHS's searches clearly were inadequate.

In addition, in its second and third enumerated requests, the Lawyers' Committee more generally requested all (2) "records containing, reflecting, documenting, summarizing, or otherwise relating to communications since January 20, 2017, between any employee of your agency and any of" a list of individuals, including, among others, Commission member Kris Kobach and Andrew Kossack, and (3) "any other records of your agency, including but not limited to internal communications, communications with other federal agencies, and communications with third parties, that reference the individuals in Request (2) or the Commission itself by name." Compl. ¶¶ 47-49; *id.* Ex. J.

DHS contends that it search was adequate for records responsive to Lawyers' Committee's second enumerated request because it "searched the email accounts of all DHS employees located within the Front Office"—which includes "the offices of the Secretary, Deputy Secretary and counselors to the Secretary"—"using the names and email address identified in plaintiff's request." Defs.' Br. (Doc. 37-1) at 10 (citing Holzer Decl. ¶ 7-9). While

- 15 -

the Lawyers' Committee suggested that the records would most likely be located in the DHS Front Office, it certainly did not intend to limit its request to those DHS employees.  The likely recipients of the requested communications should have been readily ascertainable to DHS.  Further, the Lawyers' Committee provided a list of 25 employees at DHS whose email at a minimum DHS should have searched for records.  *See* Compl. at ¶ 54.  DHS's declaration does not reflect whether each of these DHS employees was in fact searched, nor does it provide a list of custodians whose email it did search.  In any event, the Lawyers' Committee's suggestion did not absolve DHS of its "duty to construe [Lawyers' Committee's] request liberally," *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), or allow it to otherwise "limit its search to only" the Front Office if there were other offices "that are likely to turn up the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

It is again clear that DHS's search in response to the Lawyers' Committee's second and third requests were deficient from the fact the that search did not turn up documents from the PACEI *Vaughn*-type index involving Kris Kobach and Andrew Kossack.  Any search that used "Kobach" or "Kossack" as a term should have yielded these records, but DHS produced none of them.  Similarly, the searches failed to identify any documents that were provided by or that related to PACEI following the Commission's dissolution on January 3, 2018, notwithstanding statements from the President that he had directed DHS "to review [the Commission's] initial findings and determine next courses of action."  *Supra* n.9.

Finally, DHS states that "[t]o capture records potentially responsive to plaintiff's third enumerated request, DHS also searched the email accounts of all DHS employees in the Front Office for records containing the terms 'Presidential Advisory Commission on Election

Integrity,' 'PACEI,' 'PCEI,' and 'voting commission.'" Defs.' Br. at 10 (citing Holzer Decl. ¶¶ 7, 9). DHS asserts that these were the "terms that were commonly used thought the Department for the Commission." Holzer Decl. ¶ 9. However, in an email string produced by DHS discussing the PACEI, the subject line is "Election Integrity Commission," (DHS-001-HQLI-00018-000074 to 000075) a term DHS failed to include in its searches. This term as well as "election integrity" and "election commission" should have reasonably been included as search terms. DHS did not provide the specific search terms it used to search for the names of individuals requested.

In sum, DHS has failed to demonstrate "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena*, 180 F.3d at 325. DHS' request for summary judgment should be denied and DHS should be ordered to conduct a fulsome search and to produce the twenty-three identified documents from the PACEI *Vaughn* index, as well as other documents responsive to the Lawyers' Committee's requests.

### C.  DOJ-OIP's Search Was Inadequate

In response to the Lawyers' Committee request, DOJ-OIP produced 11 documents and a *Vaughn* index indicating another 7 documents were withheld in their entirety. DOJ-OIP's search was not reasonable because, among other reasons, DOJ-OIP (like DHS) failed to produce records that the Lawyers' Committee specifically identified from the PACEI *Vaughn* index. After the Lawyers' Committee submitted its initial request to DOJ-OIP, the Lawyers' Committee contacted DOJ-OIP and identified specific communications responsive to its FOIA request that were listed on the PACEI *Vaughn* index that referenced communications with the Department of Justice and provided a copy of the full index. *See* Compl. ¶¶ 34-37; *id.* Ex. F. Specifically, the Lawyers' Committee identified the following eight documents reflecting communications between DOJ and Commissioners and/or staff:

- Entry 541: "Email exchange re: Chicago Board of Election," (**DOJ official** to Commissioner McCormick, dated 5/15/17)

- Entry 544: "Email exchange discussing voting issue with attachment" (**DOJ official** to Commissioner McCormick, dated 7/5/17-7/6/17)

- Entry 564: "E-mail forwarding link to news article" (**DOJ official** to Commissioner McCormick, dated 9/15/17)

- Entry 565: "Email exchange discussing Chicago voting issue (Third party to **DOJ official** and Commissioner McCormick, dated 9/6/27, 9/11/17)

- Entry 687: "Email about setting up time to speak" (Kossack to **DOJ official,** dated 6/15/17)

- Entry 738: " Email chain and planner setting a time for call [related to litigation]" (Kossack DHS Official and Staff and **DOJ**, dated 8/1/17)

- Entry 741: "Email chain and planner setting a time for call [related to litigation]" (DHS Official to Kossack, DHS, and **DOJ**, dated 8/2/17)

- Entry 748: "Email re: collecting data from non-state entities (chain)" (Kossack to **DOJ**, dated 8/22/17)

Compl. ¶¶ 34-37; *id.* Ex. F.

As with DHS, DOJ-OIP appears to have not produced any of these documents. DOJ-OIP offers no explanation in its brief or in Ms Brinkmann's declaration for this deficiency in its search. In other words, like DHS, DOJ-OIP ignored this request entirely. This is again is clear evidence that DOJ-OIP's search was inadequate.

In addition to these deficiencies, there are other indications in the production that DOJ-OIP's search was inadequate. Only one of the documents produced by DOJ-OIP relates in any way to PACEI—the February 22, 2017 communication between Commissioner von Spakovsky and former Attorney General Sessions during which von Spakovsky objected to the appointment of Democrats to the Commission. But there are no further communications about this overture or any other documents that relate or refer to PACEI, despite the fact that the chain reflects the

email was sent to then Attorney General Sessions' counsel (Ed Haden) and his administrative assistant (Peggi Hanrahan), and a week later Sessions emailed the inquiry to himself at another email account. Ms. Brinkmann's declaration says nothing about what was done to search for other documents related to this chain, including further communications from Mr. von Spakovsky or Mr. Haden, or what efforts were made to search former-Attorney General Sessions' personal email account.

DOJ-OIP has failed to meet its burden to demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.

### D. DOJ-OSG's Search Was Inadequate

DOJ-OSG search was not reasonable because it limited the scope of its searches of email correspondence to only documents consisting of communications between DOJ-OSG and the Ohio Attorney General's Office. *See* Yancey Decl. ¶ 7.

The Lawyers' Committee's second enumerated request to DOJ-OSG requested:

> All records containing, reflecting, documenting, summarizing, or otherwise relating to communications (including emails, telephone call logs, calendar entries, meeting agendas, or any other records reflecting communications) since January 20, 2017, between any employee of your agency and any employee of the Ohio Attorney General's Office (including anyone with an email address ending in @OhioAttorneyGeneral.gov) as it pertains to Husted v. A. Phillip Randolph Institute.

Compl. ¶ 28; *id.* Ex. C.

In searching its "electronic mail correspondence," DOJ-OSG did not use the term "Husted," but only "Ohio AND attorney OR general," and "@ohioattorneygeneral.gov," because it interpreted the request narrowly as only seeking "records of communications with the Ohio Attorney General's Office about the case." Yancey Decl. ¶ 7. But the Lawyers' Committee's request was broader, and included not only the specific communications with the Ohio Attorney

General's Office, but also "[a]ll records containing, reflecting, documenting, summarizing, or otherwise relating to" any such communications. Compl. ¶ 28; *id.* Ex. C. The Lawyers' Committee thus requested internal OSG records relating to communication about the *Husted* case. Indeed, while the produced materials indicate that there was at least one in-person meeting (on June 23, 2017) and a number of calls between the OSG and Ohio Attorney General's Office, there are no documents in either DOJ-OSG's production or *Vaughn* Index that reflect these interactions or how they (or any other communications with the Ohio Attorney General's Office) may have influenced a decision by the OSG to change its position in the *Husted* case from supporting the civil rights group respondents in the Sixth Circuit to supporting petitioner (Ohio) in the Supreme Court.[11]

DOJ-OSG has failed to meet its burden to demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.

## II. DEFENDANTS' EXEMPTION 5 WITHHOLDINGS EITHER ARE INVALID OR LACK MERIT

### A. The Exemption 5 Standard

Exemption 5 excludes from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes documents traditionally afforded protection "'pursuant to evidentiary privileges in the civil discovery context,' including those covered by the attorney-client, attorney work product, and deliberative process privileges." *Long*

---

[11] While DOJ-OSG might have asserted FOIA exemptions precluding disclosure of these documents, that does not excuse DOJ-OSG from failing to run searches broad enough to capture such documents or including them on a *Vaughn* index.

*v. Dep't of Justice*, 450 F. Supp. 2d 42, 59 (D.D.C. 2006) (quoting *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990)).

For documents or portions of documents to be exempt from disclosure under the FOIA's deliberative process privilege, the agency must address with particularity the following two requirements: how they are "predecisional," and how they are "deliberative." *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 10 (D.D.C. 2004). While providing information specific to each individually-withheld document is a fundamental requirement for all withholdings under the FOIA, "[t]he need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" *Edmonds Inst. v. Dep't of Interior*, 383 F. Supp. 2d 105, 108 n.1 (D.D.C. 2005) (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). For each individual document withheld, the agency must identify the "function and significance . . . . [of the document] in the agency's decision making process." *Wilderness Soc'y*, 344 F. Supp. 2d at 14 (quoting *Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).

Moreover, "even if the documents at issue are 'predecisional' and 'deliberative,' and thereby fall under the scope of Exemption 5, there are circumstances under which they will be found outside the scope of that protection." *Brennan Ctr. For Justice v. Dep't of Justice*, 697 F.3d 184, 194-95 (2d Cir. 2012) (internal alterations, citations and quotation marks omitted). "[T]hese exceptions include: (1) when the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public; and (2) when the document is more properly characterized as an opinion or

interpretation which embodies the agency's effective law and policy, in other words, its working law." *Id.* (internal alterations, citations and quotation marks omitted).

The purpose of Exemption 5 is "not to protect Government secrecy pure and simple." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001). Rather, it is to protect a limited set of "inter-agency or intra-agency" communications so that Executive Branch officials may "communicate candidly among themselves" in order to "enhance the quality of agency decisions." *Id.* (internal quotation marks omitted).

### B. Exemption 5 Does Not Apply to DOJ-OSG's Communications with the Ohio Attorney General's Office

DOJ-OSG withheld nineteen documents in full and five documents in part pursuant to Exemption 5. *See* DOJ-OSG *Vaughn* Index. The majority of these documents consist of emails between Assistant to the Solicitor General Brian Fletcher and non-agency third parties employees of the Ohio Attorney General's Office. Yancey Decl. ¶ 12; DOJ-OSG *Vaughn* Index. The Government concedes that these communications were not "inter-agency or intra-agency" since they involved individuals outside of the federal government, but the Government contends that the communication nonetheless fall under Exemption 5 pursuant to the "consultant corollary" doctrine. However, the Supreme Court's decision in *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 9 (2001), squarely forecloses application of the consultant corollary doctrine to this case.

*Klamath* concerned communications between the Klamath Tribe and the Department of Interior (DOI), including communications related to DOI's support for the Tribe in a state court lawsuit. *Id.* at 5. The Supreme Court held that the consultant corollary can apply only to communications with third parties who are "not . . . communicating with the Government in their own interest." *Id.* at 12. That was not the case with the Tribe, which was communicating with

DOI "with their own . . . interests in mind," and which sought action from DOI "at the expense of others." *Id.* at 13. It was "dispositive" that "the apparent object of the Tribe's communications [was] a decision by an agency of the Government to support a claim by the Tribe that [was] necessarily adverse to the interests of competitors." *Id.* at 14. Since *Klamath*, numerous district courts in this Circuit have refused to apply the consultant corollary doctrine where third-parties were pursuing their own self-interests, at the expense of others, in their communications with the federal government. *See, e.g.*, *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 237 F. Supp. 2d 17, 25-27 (D.D.C. 2002) ("Where an outside party's self-interest predominates over its interest in informing or assisting the agency, that party's communications cannot be considered inter-agency for purposes of Exemption 5"); *Chesapeake Bay Found., Inc. v. U.S. Army Corps of Engineers*, 722 F. Supp. 2d 66, 76 n.9 (D.D.C. 2010) (similar); *Physicians Comm. For Responsible Med. v. Nat'l Institutes of Health*, 326 F. Supp. 2d 19, 29-30 (D.D.C. 2004) (similar).

This case is on all fours with *Klamath*. Like the Tribe there, the Ohio Attorney General's Office sought and coordinated DOJ-OSG's support in a lawsuit to which the State of Ohio was a party. The Ohio Attorney General's Office plainly was pursuing its own self-interests through these communications. Indeed, Ohio is "an independent sovereign state" that "undoubtedly approached the talks with [its] own best interests in mind." *Ctr. for Int'l Envtl. Law*, 237 F. Supp. 2d at 26. And the assistance that the Ohio Attorney General's Office sought was at the "expense of others," *Klamath*, 532 U.S. at 12—the plaintiffs in *Husted*. As in *Klamath*, "the dispositive point is that the apparent object of the [Ohio Attorney General's Office's] communications is a decision by an agency of the [federal] Government to support a claim by [Ohio] that is necessarily adverse to the interests of [others]." *Id.* at 14. Tellingly, the

- 23 -

Government cites *Klamath* in a footnote in its brief, Defs.' Br. at 20 n.5, but makes no effort to distinguish it. The decision is controlling.

The Government argues that these communications also fall under Exemption 5 pursuant to a common interest privilege. For one, the Government does not cite a single case within this Circuit ever applying the common interest privilege as a basis withholding under Exemption 5. *Cf. Chesapeake Bay Found.*, 722 F. Supp. 2d at 74. Allowing for such would be inconsistent *Klamath* and the "plainness" of Exemption 5, which applies only to "inter-agency or intra-agency" communications and not to communications with outside parties who are pursuing their own interests in litigation. *Klamath*, 532 U.S. at 9.

But even if the Government could in some circumstances invoke the common interest privilege under Exemption 5, the privilege is not applicable here. The party claiming the common interest privilege must "present to the court sufficient facts to establish the privilege," *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984), and the Government has not met its burden here. As the Government admits, there was never any common interest agreement between DOJ-OSG and the Ohio Attorney General's Office in relation to the *Husted* case. Nor do any of the communications appear to bear any markings indicating that they were sent pursuant to a common interest privilege. And the Government has presented no other evidence that there was "an agreement or a meeting of the minds" that the communications were undertaken by both sides pursuant to a common interest agreement. *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013). "Mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *Id.* (alteration and internal quotation marks omitted).

Indeed, under the Government's reasoning, *every* communication that any party has with *any* entity filing an amicus brief in support of the party would automatically be subject to the common interest privilege. That is not and cannot be the law. And the claim of a common interest privilege is particularly specious here because, until the United States filed its amicus brief in the Supreme Court on August 7, 2017, the United States and the State of Ohio were actually adverse. The United States had previously supported the plaintiffs in *Husted*, and it was only upon the filing of that August 2017 amicus brief that the United States switched sides. Many of the documents that the Government seeks to withhold under Exemption 5 precede that filing and cannot possibly be considered subject to a common interest privilege. And the Government cannot claim a common interest privilege of documents post-dating that filing either given the lack of any evidence to support the claim that the Government and the Ohio Attorney General's Office had an understanding and expectation that their communications were privileged. The Government's assertion of a common interest privilege is nothing more than a *post hoc* attempt to shield documents that should be and must be released.

In short, DOJ-OSG's communications with the Ohio Attorney General's Office do not fall under Exemption 5 as a matter of law and must be produced.

### C. DHS Fails to Adequately Justify Its Exemption 5 Withholdings

DHS's *Vaughn* index is insufficient to justify its withholding of information pursuant to the deliberative process privilege.

First, most of the entries on DHS's *Vaughn* index for records withheld under the deliberative process privilege include very little information, and do not describe either the specific deliberative process at issue, the function of the particular record, or the nature of the decisionmaking authority. Neither DHS's brief nor Mr. Holzer's declaration provide any

additional information other than conclusory assertions. For example, DHS's *Vaughn* index

contains the following entries:

- "Email message forwarding a July 19, 2017, Politico article regarding the Presidential Advisory Commission on Election Integrity amongst employees in the Office of Policy." DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000003);

- "Draft [July 3, 2017] email to the Office of the Vice President regarding the Election Integrity Commission." DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000013);

- "Internal USCIS legal memorandum . . . on the legal considerations in assisting State election officials with voter list maintenance activity using DHS data and systems" DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000086-000090);

- "Draft letter to President of the National Association of Secretaries of State regarding the designation of election infrastructure as critical infrastructure." DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000016-000017).

These and other descriptions do not provide adequate information to assess whether the

documents are both deliberative and predecisional in relation to an agency decision.

Second, DHS failed provide sufficient information to determine whether a "reasonably

segregable" portion of the documents do not fall under Exemption 5 and could be produced. *See*

5 U.S.C. § 552(b). For instance, DHS's *Vaughn* index describes a "Weekly DHS Senior Leader

Update" that discussed "new issues, key deliverables on reports, upcoming policy decisions, and

task group updates." DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000009-000012). It is

possible, if not likely, that some of these items are not deliberative in nature, but it is impossible

to tell from the vague description that DHS provided. Similarly, DHS withholds an "Email

message regarding multiple topics pending before the former DHS Chief of Staff," DHS *Vaughn*

Index (entry DHS-001-HQFQ-00794-000019-000020), but further information is necessary to

discern whether the email's discussion of one or more of the "multiple topics" was not

deliberative and should be released. These vague descriptions do not describe what policy is at

issue, the role of these particular documents in the decisionmaking process, or the nature of the decisionmaking authority vested in the participants.

Third, DHS withholds numerous documents designated as "drafts" by DHS. But "drafts are not presumptively privileged" and DHS has failed to explain in sufficient detail "whether these drafts were (1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (quoting *Arthur Andersen*, 679 F.2d at 257-58) "Either will defeat a claim of privilege, for both actions involve the exposure of the withheld documents to third parties." *Id.*; *see Coastal States*, 617 F.2d at 866 ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). The documents for which further examination in this regard is necessary include:

- Proposed responses to Congressional inquiries. DHS *Vaughn* Index (entries DHS-001-HQFQ-00794-000015; DHS-001-HQFQ-00794-000054; DHS-001-HQLI-00014-000055-000057; DHS-001-HQLI-00014-000058-000061; DHS-001-HQLI-00014-000063-000068);

- Comments regarding news articles and potential talking points. DHS *Vaughn* Index (entry DHS-001-HQFQ-00794-000003; DHS-001-HQFQ-00794-000027-000028);

- Opinions of the Secretary's advisor for infrastructure about how State officials will respond to information that is to be provided to them in a briefing as well as recommendations on how to work with the State officials. DHS *Vaughn* Index (entry DHS-001-HQLI-00014-000034-000035).

- Comments from the Officer for Civil Rights and Civil Liberties to the NPPD leadership regarding his discussion with State election officials at a conference. DHS *Vaughn* Index (entries DHS-001-HQLI-00014-000048-000049; DHS-001-HQLI-00014-000050-000051; DHS-001-HQLI-00014-000052).

In short, DHS's *Vaughn* index and supporting declaration fail to provide sufficient detail concerning DHS's Exemption 5 claims. This Court should either require DHS to supplement its

*Vaughn* index or this Court should review the withheld documents in camera to determine the applicability of Exemption 5.

### D.  This Court Should Order In Camera Review

For the reasons described above, the Lawyers' Committee submits that the Defendants have failed to meet their burden to establish the Exemption 5 applies to the withheld or redacted records.  Therefore, the Lawyers' Committee requests that this Court enter summary judgment in its favor and order production of these documents.  In the alternative, this Court should conduct in camera review of the documents to determine whether they properly fall under Exemption 5.  *See* 552 U.S.C. § 552(a)(4)(B) (stating that the Court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions").

This Court has broad discretion to require *in camera* review.  *Spirko v. U.S. Postal Service*, 147 F.3d 992, 996 (D.C. Cir. 1998).  "*In camera* review may be particularly appropriate when . . . the agency affidavits are insufficiently detailed to permit meaningful review."  *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).  A "broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional."  *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013).  Ultimately, the primary criterion is "[w]hether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption."  *Spirko*, 147 F.3d at 996 (quoting *Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978)).  Here, Defendant's declarations—which are vague and conclusory with regard to the specific deliberative processes at issue and the function and significance of each record in those processes—do not provide the Court with sufficient information to determine that the withholding and redactions implicate the deliberative process privilege.  *Id.*

### III.    DEFENDANTS IMPROPERLY WITHHELD INFORMATION UNDER EXEMPTION 6

#### A.  The Exemption 6 Standard

Exemption 6 is limited to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 is narrow.  The D.C. Circuit has held that "[u]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere under the Act." *Bigwood*, 484 F. Supp. 2d at 75.  The "clearly unwarranted" standard of Exemption 6 "weights the scales in favor of disclosure."  *Ripskis v. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984); *see also Reporters Comm. for Freedom of the Press*, 489 U.S. at 756 (noting that Exemption 6 is narrower than Exemption 7(C), which protects law enforcement documents that "could reasonably be expected to constitute an unwarranted invasion of personal privacy"); *McCutchen v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994) (same).

In analyzing whether Exemption 6 applies, this Court must first determine whether disclosure "'would compromise a substantial, as opposed to de minimis, privacy interest' because '[i]f no significant privacy interest is implicated . . . . FOIA demands disclosure.'"  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emp. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  Threats to privacy cannot be "mere possibilities" but rather must be "palpable."  *Rose*, 425 U.S. at 380 n. 19; *People for Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007).

If the government establishes a substantial privacy interest, that interest must be balanced against the public's interest in disclosure.  *Multi Ag Media*, 515 F.3d at 1228.  Indeed, "even when a significant privacy interest is at stake, Exemption 6 'require[s] a balance tilted emphatically in favor of disclosure.'"  *Gilman v. U.S. Dep't of Homeland Security*, 32 F. Supp.

3d 1, 15 (D.D.C. 2014) (quoting *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984)).  Ordinarily, "[u]pon articulation by a requester of a legitimate public interest in disclosure of names and addresses, courts have required disclosure." *Id.* at 15-16.

### B.  Exemption 6 Is Not A Blanket Exemption for the Names of Federal Employees

Defendants DHS and DOJ-OIP's broad assertion of Exemption 6 to withhold the names of Government employees contained in the documents responsive to the Lawyers' Committee's request was improper.  *See* DHS *Vaughn* Index (asserting blanket exemption "to protect the names. . . of DHS and other federal government employees contained within the various memoranda, email messages and other documents throughout the production" because they are not "senior leaders"); Holzer Decl. ¶ 15; DOJ-OIP Vaughn Index (listing only agencies as participants without individuals names in document descriptions, e.g. "Participants include OAG OASG, PAO, CRT and ED attorneys").[12]

While civilian federal employees have a privacy interest in avoiding disclosures that could "subject them to annoyance or harassment in either their official or private lives." *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980), there is not a "blanket exemption" for the names of all government employees in all records, *Baez v. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980).  To justify their Exemption 6 withholdings, the Defendants must show that the threat to employees' privacy by releasing their names is real rather than speculative. "Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Rose*, 425 U.S. at 380 n.19.

---

[12] The Lawyers' Committee does not object to the Exemption 6 redactions related to specific employee email addresses and phone numbers.

Here, neither DHS nor DOJ-OIP has attempted to explain how the release of the names DHS and DOJ-OIP personnel derived simply by the nature of their employment with those agencies would subject them to any real threat of "annoyance or harassment in either their official or private lives." *Lesar*, 636 F.2d at 487. Ms. Brinkman's declaration does not offer any explanation for the withholding of names of participants in communications on DOJ-OIP's *Vaughn* Index. Mr. Holzer, meanwhile, on behalf of DHS asserts that the "the names of non-leadership lower level employees should not be disclosed as the personal privacy interests of such employees outweighed any public interest in their disclosure." But Mr. Holzer identifies no legal authority for the proposition that names of "lower level employees" should be withheld under Exemption 6. Nor does Mr. Holzer describe in any detail how disclosure "would constitute an unwarranted invasion of their personal privacy," and does not articulate any actual or real threat if these employees names are disclosed. An agency's claims, in affidavits, declarations, or a *Vaughn* Index may not "merely recite the statutory standards," *Carter*, 830 F.2d at 392-393, because "broad categorical descriptions" are inadequate to allow "a reviewing court to engage in a meaningful review of the agency's decision," *Hall*, 552 F. Supp. 2d at 27 (citing *Oglesby*, 79 F.3d at 1176). As noted above, if there is not a significant privacy interest, this ends the inquiry and the documents must be disclosed. *Multi Ag Media*, 515 F.3d at 1229.

On the other hand, details regarding the names, positions, and job duties of the authors and recipients of the withheld documents are relevant to understanding how the government works. In particular, where Defendants have asserted various deliberative process privileges under Exemption 5, *see supra* Section II, this "contextual information is critical in assessing a deliberative process privilege claim," because it helps understand "the nature of the decisionmaking authority vested in each e-mail participant," or "the e-mail participants' relative

- 31 -

positions in the agency's chain-of-command." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F. Supp. 2d 157, 170 (D.D.C. 2011); *see also Access Reports v. Dept. of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("A document from a junior to a senior is likely to reflect his or her own subjective opinions . . . By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take." (citation omitted)).

Because DHS and DOJ-OIP have failed to establish a substantial privacy interest in the names of government employees and disclosure would serve FOIA's core goal of allowing citizens to know "what their government is up to," Exemption 6 does not apply.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment should be granted and Defendants' motion for summary judgment should be denied.

DATED:  April 12, 2019

Kristen Clarke (D.C. Bar # 973885)
Jon Greenbaum (D.C. Bar # 489887)
Ezra D. Rosenberg (D.C. Bar # 360927)
Marcia Johnson-Blanco (D.C. Bar # 495211)
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1401 New York Ave., NW
Washington, DC  20005
Telephone:  +1 202.662.8600
Facsimile:  +1 202.783.0857
erosenberg@lawyerscommittee.org

Respectfully Submitted,

/s/  John A. Freedman
John A. Freedman (D.C. Bar No. # 453075)
Robert N. Weiner (D.C. Bar # 298133)
Eric A. Rubel (D.C. Bar # 405421)
David J. Weiner (D.C. Bar # 499806)
R. Stanton Jones (D.C. Bar # 987088)
Daniel F. Jacobson (D.C. Bar # 1016621)
Andrew W. Beyer (D.C. Bar # 994996)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001
Telephone:  +1 202.942.5000
Facsimile:  +1 202.942.5999
John.Freedman@arnoldporter.com

Counsel for Plaintiff Lawyers' Committee for
Civil Rights Under Law

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ John A. Freedman_____
John A. Freedman
Counsel for Plaintiff